**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DANIELLE FREEMAN, *et al.*, | |
| Plaintiffs | |
| v. | Civil Action No. 14-628 (CKK) |
| MEDSTAR HEALTH INC., *et al.*, | |
| Defendants | |

**MEMORANDUM OPINION and ORDER**
(May 9, 2016)

Plaintiffs are current and former hospital employees who bring claims against MedStar Health, Inc. ("MedStar") and against six MedStar hospitals. The hospital defendants are two District of Columbia hospitals—Washington Hospital Center and Georgetown University Hospital—and four Maryland hospitals—Franklin Square Hospital, Harbor Hospital, Union Memorial Hospital, and Good Samaritan Hospital. As the Court explained previously, essentially, Plaintiffs claim that they were not paid for work that they conducted during their meal breaks. *See Freeman v. MedStar Health Inc.*, 87 F. Supp. 3d 249, 252 (D.D.C. 2015). As the case now stands, under Count I, Plaintiffs bring *individual* claims under the Fair Labor Standards Act ("FLSA") against each of the defendants and seek to bring *collective action* claims under the FLSA with respect to four hospitals (Franklin Square, Harbor, Union Memorial, and Washington Hospital Center). Under Count II, plaintiffs employed at the D.C. hospitals bring *individual* claims pursuant to the District of Columbia Minimum Wage Act; Plaintiffs also seek to bring *collective action* claims with respect to Washington Hospital Center. Finally, the plaintiffs

employed at the Maryland hospitals bring *individual* claims pursuant to the Maryland Wage and Hour Law (Count III) and pursuant to the Maryland Wage Payment Collection Law (Count IV).[1]

Before the Court is Defendants' [77] Motion for Partial Summary Judgment as to Plaintiffs Melissa Gayle, Raina McCray, Lorraine Tyeryar, and Cherry Graziosi. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' [77] Motion for Partial Summary Judgment. As explained further below, the Court GRANTS the motion with respect to Gayle, McCray, and Tyeryar, but DENIES the motion with respect to Graziosi.

## I. BACKGROUND

Given the narrow scope of the issues presented in the motion now before the Court and the absence of material factual disputes as to the issues the Court resolves today, the Court reserves the presentation of the relevant facts for the discussion of the individual issues below.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar

---

[1] Previously, this case included putative class action claims pursuant to Federal Rule of Civil Procedure 23, with respect to the Maryland law claims. Those have been withdrawn. *See* Minute Order dated June 22, 2015.

[2] The Court's consideration has focused on the following documents:
- Defs.' Mot. for Motion for Partial Summary Judgment as to Plaintiffs Melissa Gayle, Raina McCray, Lorraine Tyeryar, and Cherry Graziosi ("Defs.' Mot."), ECF No. 77;
- Pls.' Mem. of Law in Opp'n to Defs.' Mot. ("Pls.' Opp'n"), ECF No. 81; and
- Defs.' Reply in Supp. of Mot. for Partial Summ. Judgment ("Defs.' Reply"), ECF No. 84.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

### III. DISCUSSION

The pending motion presents three discrete issues. First, Defendants seek summary judgment with respect to the overtime claims of Plaintiffs Gayle, McCray, and Tyeryar, arguing that those claims fail because those Plaintiffs did not work more than 40 hours a week at the relevant times and places of employment. Plaintiffs concede that they do not have overtime claims. *See* Pls.' Opp'n at 1. No more need be said regarding this argument, and the Court will grant summary judgment to Defendants, as requested, regarding these claims. Second, Defendants seek summary judgment with respect to these same three Plaintiffs on their minimum wage claims under Counts I, II, and III. The parties' dispute with respect to this argument is purely legal, and the Court addresses it below. Third, Defendants seek summary judgment with respect to Plaintiff Graziosi on the grounds of judicial estoppel, arguing that she should be estopped from asserting her claims in this action in light of certain facts connected with a bankruptcy petition filed last year (which was subsequently withdrawn). The Court discusses the parties' arguments regarding the minimum wage claims, followed by the parties' arguments regarding judicial estoppel.

**A.  Minimum Wage Claims**

Because Plaintiffs worked less 40 hours a week during the time periods and places of employment relevant to this litigation, as the parties agree, it is necessary to determine the "relevant unit for determining compliance with the minimum wage prescriptions of federal and local law."[3] *Dove v. Coupe,* 759 F.2d 167, 168 (D.C. Cir. 1985). Ultimately, the parties' arguments about the viability of certain plaintiffs' minimum wage claims amount to a legal disagreement about the relevant unit for measuring compliance with the applicable statutory provisions, or "measuring rod," as explained further below. Because the Court agrees with Defendants that the workweek is the appropriate "measuring rod," and because there are no material facts in dispute, the Court grants summary judgment to Defendants with respect to the minimum wage claims at issue.

As prefatory matter, the Court must address Plaintiffs' argument that the legal standard for minimum wage claims has previously been settled by the Court earlier in this litigation and is, therefore, governed by the "law of the case." Plaintiffs' argument is wrong on the law and wrong on the facts.

The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has recently confirmed that the law of the case "doctrine holds that a 'legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, [governs] future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.' " *United States v. Burroughs*, 810 F.3d 833, 838 (D.C. Cir. 2016) (quoting *United States v. Thomas*, 572 F.3d 945, 949 (D.C. Cir. 2009) (alteration in

---

[3] Generally speaking, if the plaintiffs had worked more than 40 hours a week, the overtime provisions of the relevant statutes would be applicable and different issues would arise.

original). The doctrine also encompasses a bar on subsequent revisiting of issues previously

decided by an *appellate court* "explicitly or by necessary implication." *Crocker v. Piedmont

Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995). Therefore, the law of the case doctrine is

clearly inapplicable in these circumstances for a simple reason: no party has thus far appealed

any decision of this Court to the D.C. Circuit.

True, courts and litigants sometimes use "law of the case" to refer to the general principle

that " '[w]here issues have been resolved at a prior state in the litigation, based upon principles

of judicial economy, courts generally decline to revisit [them].' " *Pro-Football, Inc. v. Harjo*, 567

F. Supp. 2d 46, 52 (D.D.C. 2008), *aff'd in part*, 565 F.3d 880 (D.C. Cir. 2009) (citation omitted).

But even that broader principle has no application to the issue before the Court. The Court never

previously decided, directly or by implication, the legal question regarding minimum wage

claims that is now before the Court: whether the "workweek measuring rod" or some other unit

of measurement is applicable to minimum wage claims. In their motion to dismiss, Defendants

never presented any argument related to the ones they present in the motion for partial summary

judgment now before the Court.[4] Therefore, Defendants never "waived" or "conceded" such an

argument by failing to respond to arguments in Plaintiff's opposition to the motion to dismiss.

Concomitantly, the Court simply did not make any decisions at the motion to dismiss stage that

---

[4] In resolving the motion to dismiss, the Court described Defendants' arguments regarding the
minimum wage claims as follows:

> With respect to the minimum wage claims, Defendants argue that the claims are
> deficiently pleaded because Plaintiffs have not pleaded information about the
> amount of time that they allegedly spent performing tasks during their meal
> breaks. Defendants further argue that Plaintiffs have not pleaded adequately that
> the amount of time was more than *de minimis*.

*Freeman*, 87 F. Supp. 3d at  257-58.

determined—explicitly or by implication—the legal standard for minimum wage claims. Accordingly, the Court will turn to the substance of the parties' arguments regarding the minimum wage claims.[5]

Citing to the D.C. Circuit's 1985 decision in *Dove v. Coupe*, Defendants argue that the relevant measuring rod under the FLSA and under the D.C. Minimum Wage Act is the "workweek." 759 F.2d at 168. Importantly, the parties agree that, if the workweek is the appropriate measuring rod, summary judgment for Defendants with respect to the specific claims at issue in the pending motion is warranted.  However, Plaintiffs essentially argue that *Dove* is not binding on this Court and that, upon examining the relevant statutes, the Court should adopt the "hourly measuring rod," or, in the alternative, the "contract measuring rod."[6] Plaintiffs

---

[5] Even if the Court had somehow previously decided this issue, the Court would not be barred from revisiting it now as there is no binding "law of the case" on point.

[6] A brief example clarifies the meaning of these alternative methodologies. Suppose a person works for a single employer 24 hours a week—*eight hours* a day, three days week. Suppose further that the person is paid $50 for *each of seven hours* a day, but is required to work an eighth hour without pay. Over the course of a week, therefore, such a person would be paid $1,050, which would actually be $43.75 per hour of time worked.

Suppose also that the applicable minimum wage were $10 per hour. Using the "workweek measuring rod," there is a violation only if, averaged over the workweek, the hourly wage is less than $10. There is no such violation in this example because $43.75 per hour is above $10 per hour. By contrast, using the "hourly measuring rod," a Court looks to whether a person was paid the minimum wage for every individual hour worked. *See Norceide v. Cambridge Health All.*, 814 F. Supp. 2d 17, 23-24 (D. Mass. 2011). Pursuant to this methodology, there is a violation in this example—because the employee is paid *zero dollars* for the eighth hour each day, for a total of three "unpaid" hours over the course of a week.

Finally, under the "contract measuring rod," a Court looks to the specific employment contract in question to determine the scope of compensable work. *See D'Arezzo v. Providence Ctr., Inc.*, No. C.A. 15-120-M-LDA, 2015 WL 6673356, at *7 (D.R.I. Oct. 30, 2015). Applying this so-called "measuring rod" requires an assessment of the specific facts of a case and is not necessary to discuss further here. *See id.* at *7, n.15 (acknowledging that the " 'contract measuring rod' is not so much a measuring rod, as recognition that a measuring rod is not needed when an employee is required to do uncompensated work not included in her contract").

further argue that, if the Court adopts either of these measuring rods, the claims in question will survive the pending motion for summary judgment.

On this core legal question, the Court begins where it also, ultimately, must end: with the pronouncement of the D.C. Circuit on the subject. The D.C. Circuit has explicitly held that, under the FLSA and under the D.C. Minimum Wage Act, the "workweek measuring rod" determines liability under the minimum wage provisions of those statutes. *See Dove*, 759 F.2d at 172. Moreover, the D.C. Circuit specifically concluded that a narrower unit of measurement, such as an "hourly measuring rod," did not apply under those statutes. *See id.* Notwithstanding Plaintiffs' suggestions to the contrary, no subsequent case law has cast doubt on these binding holdings.

With respect to the FLSA, the D.C. Circuit has never reversed course. Nor has the Supreme Court held or even suggested that the "workweek measuring rod" is improper. Indeed, the Court notes that five of the United States Courts of Appeals have adopted the "workweek measuring rod," eight have not taken a position, and none has come to a contrary conclusion. *See D'Arezzo*, 2015 WL 6673356, at *4 (citing cases).

Despite this definitive result, Plaintiffs argue that *Dove* has no precedential value in light of subsequent legal development regarding the level of deference to give to administrative agencies under *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Plaintiffs' argument gets no traction for two fundamental reasons. First, Plaintiffs misconstrue *Dove*'s reliance on *Chevron* and, therefore, the impact of subsequent legal development regarding *Chevron* deference. In *Dove*, the D.C. Circuit did not apply what has become the standard two-step *Chevron* analysis—which is hardly surprising given that *Dove* was issued less than 10 months after *Chevron*. The D.C. Circuit, instead, analyzed the statute, case

7

law from other Circuits, and pronouncements of the Department of Labor. *See Dove*, 759 F.2d at 170-72. Based on that analysis in its entirety, the court held that the "workweek measuring rod" was proper. *Id.* at 172. Indeed, the court did not even mention *Chevron* until a footnote at the end of the court's discussion of the legal issue presented. *See Dove*, 759 F.2d at 172 n.9; *see id.* ("In keeping with the view of our sister courts, and giving respectful consideration to the position of the agency charged with administration of the Fair Labor Standards Act, we hold that the magistrate erred in employing a period shorter than the workweek to measure compliance with minimum wage law.") (footnote citing *Chevron* omitted). In short, Plaintiffs' argument that subsequent case law expounding on *Chevron* vitiates *Dove*'s precedential status has no basis in law or fact. Second, even if case law had cast doubt on *Dove*, it would be for the D.C. Circuit—not this Court—to address any such doubts in the first instance. Unless and until the D.C. Circuit does so, *Dove* remains binding on this Court. Therefore, the "workweek measuring rod" is the appropriate methodology for determining compliance with the FLSA's minimum wage provisions. Accordingly, the Court grants summary judgment to Defendants with respect to the FLSA minimum wage claims at issue in the pending motion.

Turning to the D.C. Minimum Wage Act, the D.C. Circuit held that the "workweek measuring rod" was applicable to this statute, as well, as explained above. The D.C. Circuit has not reversed course on this matter, either. Nor has the District of Columbia Court of Appeals, the final arbiter of District of Columbia law, suggested a contrary result. Indeed, Plaintiff argues that the D.C. Minimum Wage Act "mirrors the FLSA." Pls.' Opp'n at 14; *see also Dove*, 759 F.2d at 170-73 (treating D.C. and federal minimum wage provisions as identical with respect to the relevant "measuring rod"). For all of these reasons, the D.C. Circuit's determination that the "workweek measuring rod" applies to the D.C. Minimum Wage Act continues to bind this Court.

Accordingly, the Court grants summary judgment to Defendants with respect to the minimum wage claims under the D.C. Minimum Wage Act that are at issue in the pending motion.

Finally, the Court turns to Plaintiffs' argument regarding the Maryland Wage and Hour Law—an argument confined to a single footnote in Plaintiffs' brief. Specifically, Plaintiffs' argument is limited to their cursory suggestion that their arguments in favor of an "hourly measuring rod" under the D.C. Minimum Wage Act, and in turn under the FLSA, are applicable to minimum wage claims under the Maryland Wage and Hour Law. Indeed, Plaintiffs have provided no authority or other basis for the Court to conclude that a *different* unit of measurement is applicable under Maryland law as compared to D.C. or Federal law. Therefore, just as the "workweek measuring rod" applies under the FLSA and under D.C. Minimum Wage Act, so too, it applies under the Maryland Wage and Hour Law.  For that reason, the Court grants summary judgment to Defendants with respect to the minimum wage claims under the Maryland Wage and Hour Law that are at issue in the pending motion, as well.

In sum, the Court grants summary judgment to Defendants with respect to Plaintiffs Gayle, McCray, and Tyeryar on their minimum wage claims under the FLSA, the D.C. Minimum Wage Act, and the Maryland Wage and Hour Law. Because those claims are clearly legally foreclosed, the Court need not address Defendants' argument that Plaintiffs have not properly asserted minimum wage claims, in the first instance. Given this conclusion and given Plaintiffs' concession that these individuals cannot assert overtime claims under these statutes, the Court grants summary judgment to Defendants with respect to Plaintiffs Gayle and Tyeryar as to Counts I, II, and III. The only claims of those two plaintiffs that survive summary judgment are their individual claims under the Maryland Wage Payment Collection Law (Count IV). The

Court grants summary judgment to Defendants with respect to Plaintiff McCray as to all of her claims, and she is dismissed as a party.

## B.  Judicial Estoppel

Defendants argue that Plaintiff Cherry Graziosi's claims are barred by the doctrine of judicial estoppel because Graziosi failed to disclose her claims in a bankruptcy petition filed on November 9, 2015. Defendants also argue that judicial estoppel is warranted because Graziosi indicated in her November 10, 2015, deposition for this case that she had never filed for bankruptcy. Graziosi responds that judicial estoppel would not be appropriate because she was unaware of the filing of the petition by her attorney and, moreover, she moved to dismiss the petition voluntarily soon after she learned it was filed. Therefore, she argues she has not—and will not—derive any unfair advantage from the representations in these parallel proceedings. The Court agrees with Graziosi that judicial estoppel is not warranted in these circumstances.

As the D.C. Circuit has recognized, the "Supreme Court has indicated that judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.' " *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 797 (D.C. Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)). For that reason, a majority of the Circuits apply an abuse of discretion standard to reviewing a district court's application of judicial estoppel—although the D.C. Circuit has not yet decided that question. *See id.* (citing cases). To guide a district court's exercise of that discretion, the Supreme Court has identified "several factors [that] typically inform the decision whether to apply the doctrine in a particular case" while noting that these factors are not "inflexible prerequisites or an exhaustive formula." *New Hampshire*, 532 U.S. at 250, 251. The D.C. Circuit has distilled that inquiry as follows:

> There are at least three questions that a court should answer in deciding whether
> to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with

its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?

*Moses*, 606 F.3d at 798 (citing *New Hampshire*, 532 U.S. at 750-501). Moreover, the D.C. Circuit has clarified that "a court may not invoke judicial estoppel against a party who has engaged in misconduct in a separate proceeding if that proceeding is unrelated to the current proceeding." *Id.* at 799.

Defendants emphasize that Plaintiff Graziosi authorized the bankruptcy petition, despite her representation to the contrary in responding to the pending motion and in testimony before the bankruptcy court. However, this Court need not delve further into the circumstances surrounding the filing of that petition. As Graziosi states, she never convinced the bankruptcy court to adopt any position inconsistent with the ones taken in this proceeding. Indeed, once she learned of the petition—she says—she moved to withdraw the petition and to convince the bankruptcy court that she never authorized the filing. The bankruptcy judge then granted that request. Importantly, Defendants have identified no way in which Graziosi would "derive an unfair advantage or impose an unfair detriment on" them if her claims are allowed to go forward in this action. *Id.* at 798. Specifically, Defendants never identify any way in which either they have been prejudiced by these alleged inconsistent filings or that these proceedings have been compromised by Graziosi's representations. Graziosi's bankruptcy petition was voluntarily dismissed on February 8, 2016, and is no longer pending. *See* Docket, *In re: Graziosi* (D. Md. Bankr. 15-25568). Therefore, the Court concludes that none of the identified contradictory representations provide a basis for judicial estoppel.

Regardless of the precise circumstances of the 2015 bankruptcy filing, the Court concludes that neither the filing itself nor Plaintiff's representation in this action that no such filing had been made justify the application of judicial estoppel. Therefore, Plaintiff Graziosi's claims are not barred, and the Court denies Defendants' motion for summary judgment with respect to this plaintiff.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby **ORDERED** that Defendants' [77] Motion for Partial Summary Judgment as to Plaintiffs Melissa Gayle, Raina McCray, Lorraine Tyeryar, and Cherry Graziosi is GRANTED-IN-PART and DENIED-IN-PART. The Court GRANTS Defendants' motion with respect to Gayle, McCray, and Tyeryar, and DENIES the motion with respect to Graziosi.

It is further **ORDERED** that summary judgment is GRANTED to Defendants with respect to Plaintiff Gayle as to Counts I, II, and III.

It is further **ORDERED** that summary judgment is GRANTED to Defendants with respect to Plaintiff McCray as to all claims. McCray is hereby DISMISSED as a party.

It is further **ORDERED** that summary judgment is GRANTED to Defendants with respect to Plaintiff Tyeryar as to Counts I, II, and III.

The Court will separately resolve the pending motion for conditional certification.

Dated: May 9, 2016

                                          /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge