## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>
DANIELLE FREEMAN, <em>et al.</em>,<br>
    Plaintiffs<br>
<br>
      v.<br>
<br>
MEDSTAR HEALTH INC., <em>et al.</em>,<br>
    Defendants
</td>
<td>
Civil Action No. 14-628 (CKK)
</td></tr>
</table>

### MEMORANDUM OPINION and ORDER
(May 20, 2016)

Plaintiffs are current and former hospital employees who bring claims against MedStar Health, Inc. ("MedStar") and against six MedStar hospitals. As the Court explained recently in resolving Defendants' motion for partial summary judgment, Plaintiffs essentially claim that they were not paid for work that they conducted during their meal breaks. *See Freeman v. MedStar Health Inc.*, No. CV 14-628 (CKK), 2016 WL 2642958 (D.D.C. May 9, 2016). In addition to the individual claims that Plaintiffs bring in this action, Plaintiffs seek to bring collective action claims under the Fair Labor Standards Act ("FLSA") with respect to 20 departments of four hospitals at which they, severally, have worked—Franklin Square Hospital, Harbor Hospital, Union Memorial Hospital, and Washington Hospital Center.

Before the Court is Plaintiffs' [75] Revised Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b). Upon consideration of the pleadings,[1]

---

[1] The Court's consideration has focused on the following documents:

- Pls.' Revised Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b) ("Pls.' Mot."), ECF No. 75;
- Defs.' Mem. in Opp'n to Pls.' Mot. ("Defs.' Opp'n"), ECF No. 78;
- Pls.' Reply Mem. of Law in Supp. of Pls.' Mot. ("Pls.' Reply"), ECF No. 80;
- Defs.' Mot. for Leave to File a Sur-Reply in Further Opp'n to Pls.' Mot., ECF No. 82;
- Pls.' Opp'n to Defs.' Mot. to File Sur-Reply, ECF No. 83; and
- Defs.' Reply Brief in Further Supp. of its Mot. For Leave to File Sur-Reply, ECF No. 92.

the relevant legal authorities, and the record as a whole, the Court GRANTS-IN-PART and

DENIES-IN-PART Plaintiffs' [75] Revised Motion for Order Authorizing Notice. As explained

further below, the Court DENIES Plaintiffs' motion with respect to certain proposed collectives

as a result of the Court's prior resolution of Defendants' motion for partial summary judgment.

The Court GRANTS the motion as to nine proposed department-specific collectives unaffected

by the motion for partial summary judgment. The Court will definitively resolve the final form of

the notice to be sent to the employees in those collectives after providing the parties an

opportunity to resolve several remaining issues regarding the notice and the methodology for

distributing that notice.

## I. BACKGROUND

In light of the scope of the issues presented in the motion now before the Court, the Court

reserves the presentation of the relevant facts for the discussion of the individual issues below.

## II. LEGAL STANDARD

The FLSA requires employers to pay a minimum wage for compensable working time

and an overtime premium for compensable hours worked in excess of forty hours per week. *See*

29 U.S.C. §§ 206, 207. The statute contemplates what is commonly referred to as a "collective

action," in which plaintiffs bring claims on behalf of "similarly situated" employees but those

---

In light of the complexity of the issues raised in the pending motion, as well as in the parallel
motion for partial summary judgment, the Court concludes that Defendants' proposed sur-reply
would provide assistance to the Court. Accordingly, the Court grants Defendants' [82] Motion for
Leave To File a Sur-Reply in Further Opposition To Plaintiffs' Revised Motion for Order
Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(B).

In an exercise of its discretion, the Court finds that holding oral argument in this action would
not be of assistance in rendering a decision. *See* LCvR 7(f).

employees do not become part of the action unless and until they "opt-in" by filing a written

consent to join as party-plaintiffs. Under the FLSA:

> An action ... may be maintained against any employer ... by any one or more
> employees for and [o]n behalf of himself or themselves and other employees
> similarly situated. No employee shall be a party plaintiff to any such action unless
> he gives his consent in writing to become such a party and such consent is filed in
> the court in which such action is brought.

29 U.S.C. § 216(b).

   With collective actions, district courts have considerable discretion in managing the

process of joining similarly situated employees in a manner that is both orderly and sensible. *See*

*Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 170 (1989); *Alvarez v. City of Chicago,* 605

F.3d 445, 449 (7th Cir. 2010). As the Court previously explained in *Dinkel v. MedStar*, 880 F.

Supp. 2d 49, 52-53 (D.D.C. 2012), courts in this Circuit and others have settled on a two-stage

inquiry for determining when a collective action is appropriate:

> The first step involves the court making an initial determination to send notice to
> potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs
> with respect to whether a FLSA violation has occurred. The court may send this
> notice after plaintiffs make a "modest factual showing" that they and potential
> opt-in plaintiffs "together were victims of a common policy or plan that violated
> the law." … The "modest factual showing" cannot be satisfied simply by
> "unsupported assertions," but it should remain a low standard of proof because
> the purpose of this first stage is merely to determine *whether* "similarly situated"
> plaintiffs do in fact exist. At the second stage, the district court will, on a fuller
> record, determine whether a so-called "collective action" may go forward by
> determining whether the plaintiffs who have opted in are in fact "similarly
> situated" to the named plaintiffs. The action may be "de-certified" if the record
> reveals that they are not, and the opt-in plaintiffs' claims may be dismissed
> without prejudice.

*Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010) (citations and emphasis in original), *cert.*

*denied,* 132 S. Ct. 368 (2011); *accord Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 189, 192–

93 (3d Cir. 2011), *rev'd on other grounds,* 133 S. Ct. 1523 (2013); *Morgan v. Family Dollar*

*Stores, Inc.,* 551 F.3d 1233, 1260–62 (11th Cir. 2008), *cert. denied,* 558 U.S. 816 (2009); *Comer*

*v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546–47 (6th Cir. 2006); *Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 170 (D.D.C. 2014); *Blount v. U.S. Security Associates*, 945 F. Supp. 2d 88, 92-93 (D.D.C. 2013).

At the first stage, often loosely referred to as "conditional certification," the named plaintiffs must present "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." *Symczyk,* 656 F.3d at 193 (quotation marks omitted). This factual showing has been described as " 'not particularly stringent,' 'fairly lenient,' 'flexible,' [and] 'not heavy.' " *Morgan,* 551 F.3d at 1261 (citations and notations omitted). As the Court noted in *Dinkel*, at this stage, district courts should ordinarily refrain from resolving factual disputes and deciding matters going to the merits. *See Dinkel*, 880 F. Supp. 2d at 53 (citing *Lynch v. United Servs. Auto. Ass'n,* 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007); *Camper v. Home Quality Mgmt. Inc.,* 200 F.R.D. 516, 520 (D. Md. 2000)).

If a collective is "conditionally certified," employees in the collective are provided notice of the action and an opportunity to join as party-plaintiffs. After conducting discovery, the parties then proceed to the second stage of analysis, at which point the question is "whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff[s]." *Symczyk,* 656 F.3d at 193.

## III. DISCUSSION

Under the FLSA, as explained above, subject to additional requirements, "[a]n action to recover the liability … may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). As the case currently stands, Plaintiffs seek "conditional certification" of 20

separate groups of such individuals, each consisting of employees from a single department of one of four MedStar Hospitals.[2] *See* Pls.' Mot. at 3-4 ("Plaintiffs now seek to represent collective groups from four of these hospitals"); Pls.' Reply at 10-11 ("Plaintiffs deliberately structured their complaint to seek certification of distinct department collectives. … That Plaintiffs seek certification of distinct department collectives is largely lost on Defendants here."); *see also* Fourth Am. Compl. ¶ 36 (delineating separate collectives for 56 hospital departments).[3]

Defendants present several arguments why the Court ought not "conditionally certify" the 20 department-specific collectives proposed for notice by Plaintiffs. The Court first addresses Defendants' argument that the Court cannot "conditionally certify" those departments that are represented solely by individual named plaintiffs on whose claims the Court granted summary judgment. The Court concludes that, with respect to the departments represented solely by those named plaintiffs on which the Court has already granted summary judgment to the Defendants, the Court cannot and will not "conditionally certify" those collectives for notice. The Court next considers Defendants' several arguments that Plaintiffs have not adequately demonstrated that the members of the proposed department collectives are "similarly situated" to the named

---

[2] The Court emphasizes that Plaintiffs are seeking to certify 20 department-specific collectives. Notwithstanding some lack of precision in Plaintiffs' briefing, the Court does not understand Plaintiffs to be seeking certification of one overall group of employees from all of the 20 departments. *Compare* Pls.' Mot. at 4 (appearing to describe single collective encompassing 20 departments) *with id.* at 3 (describing request to certify "collectives groups" from four hospitals). Indeed, Plaintiffs have clarified that they "seek certification of distinct department collectives." Pls.' Reply at 10-11. Moreover, this understanding accords with the Fourth Amended Complaint, the operative complaint in this case. *See* Fourth Am. Compl. ¶ 36. Were Plaintiffs to seek to amend the complaint, yet again, to reflect a single collective encompassing multiple departments, the Court would be chary of allowing them to do so. Plaintiffs have proceeded on a department-specific collective theory throughout this case, and the Court would not allow them to reverse course and follow an alternative route going forward.

[3] Plaintiffs do not seek "conditional certification"—i.e., the dissemination of notice—of all of the 56 collectives enumerated in the Fourth Amended Complaint. Nor do Plaintiffs seek "conditional certification" of any collectives under the D.C. Minimum Wage Act.

plaintiffs. The Court concludes that it is proper to "conditionally certify" the nine departmental collectives not affected by the Court's grant of partial summary judgment to Defendants. Finally, the Court addresses the parties' arguments regarding the specific notice proposed by Plaintiffs.

## A. Collectives with no Viable Representative

As noted above, Plaintiffs seek "conditional certification" of 20 hospital departments. Each of 19 of the proposed collectives would be represented by one of eight named plaintiffs: Margaret Brown (one collective), Cathleen Keller (one collective), Lorraine Tyeryar (five collectives), Melissa Gayle (one collective), Lisa Braswell (one collective), Raina McCray (eight collectives), Cherry Graziosi (one collective), and Danielle Freeman (one collective). *See* Pls.' Mot. at 3-4. The twentieth and final proposed collective would be represented by two named plaintiffs—Tyeryar, together with Dorothy Eggleston. *See id.* at 3. On May 9, 2016, the Court granted in part and denied in part Defendants' [77] Motion for Partial Summary Judgment, granting summary judgment to Defendants with respect to certain FLSA claims against Tyeryar, Gayle, and McCray. In light of that result, the Court cannot "conditionally certify" any department represented solely by one of those three plaintiffs, where the Court granted summary judgment with respect to the claims of the proposed representative that pertain to that department.

A word is in order about the timeline of the briefing of the pending "conditional certification" motion and of the now-resolved motion for partial summary judgment. In opposing Plaintiffs' renewed motion for "conditional certification," Defendants argued that the Court should not "conditionally certify" classes that were to be represented by Tyeryar, Gayle, McCray,

and Graziosi because those plaintiffs' claims could not survive summary judgment.[4] The same

day that Defendants filed their opposition to Plaintiffs' renewed motion for "conditional

certification" they filed a motion for partial summary judgment with respect to four individual

plaintiffs. The parties' "conditional certification" arguments pertaining to the underlying merits

were based on an unknown—whether the Court would grant the motion for partial summary

judgment. Defendants argued that the Court ought to grant partial summary judgment based on

the record as it then stood and that, as a result, the Court could not "conditionally certify"

collectives represented by those plaintiffs. Plaintiffs argued the reverse. That hypothetical has

now been resolved as the Court subsequently granted the motion for partial summary judgment

with respect to Tyeryar, Gayle, and McCray for the reasons explained in the Court's prior

Memorandum Opinion and Order. *See Freeman*, 2016 WL 2642958, at *5. Therefore, the legal

question for the Court is now whether, given that summary judgment has been granted to

Defendants on certain FLSA claims by these three plaintiffs, the Court can "conditionally

certify" collectives based on those individuals.[5] The Court concludes that it cannot and will not

---

[4] Defendants initially framed this argument by stating that the specific named plaintiffs did not have "standing" to represent the proposed collectives in this action because their claims would not survive summary judgment. Defs.' Opp'n at 42-43. Plaintiffs responded that each of the named plaintiffs have standing under Article III of the Constitution to pursue their claims. Pls. Reply at 20-21. Plaintiffs also explained Defendants' summary judgment argument is not a proper basis to deny "conditional certification." *Id.* at 21. In their proposed sur-reply, Defendants clarify that they are not arguing that Plaintiffs' lack Article III standing; they simply argue that, because partial summary judgment is warranted with respect to specific plaintiffs, those plaintiffs cannot serve as the basis for "conditional certification." *Id.* In light of Defendants' clarification, there is no need to address the supposed Article III argument further; instead, the Court the addresses the parties' arguments regarding the impact of the Court's grant of partial summary judgment.

[5] Given the current posture of this case, cases concerning whether courts should allow discovery prior to resolving "conditional certification" motions and whether courts should address any merits issues before resolving "conditional certification" motions are inapposite.

"conditionally certify" a collective for a department where there is no longer a named plaintiff with a viable claim.

The FLSA only provides for an action to "be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). In other words, a named plaintiff can be a representative for "other employees similarly situated," subject to other criteria not relevant here. The gravamen of Plaintiffs' renewed motion for conditional certification is that there are 20 department-specific groups of employees who are "similarly situated" to the named plaintiff identified in connection with each department. For example, Plaintiffs seek "conditional certification" of a collective of employees in the Orthopedic Department of Union Memorial Hospital, to be represented by Gayle, who worked in that department. Pls.' Mot. at 3. However, the Court has now granted summary judgment to Defendants with respect to Gayle's FLSA claims. Because those claims are, as a result, eliminated from this case, the other employees in this department cannot be said to be "similarly situated" to Gayle. *See* 29 U.S.C. § 216(b). In short, without a named plaintiff who retains a viable claim that is the same as the one to be prosecuted by members of a specific proposed collective, the Court cannot "conditionally certify" that collective.

The Supreme Court's analysis of mootness in FLSA actions confirms this result. As the Supreme Court recently explained in *Campbell-Ewald Co. v. Gomez*, "[a]bsent a plaintiff with a live individual case, the Court concluded, the suit could not be maintained." 136 S. Ct. 663, 670 (2016), as revised (Feb. 9, 2016) (citing *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528, 1529, n.4 (2013)). Although the Supreme Court's analysis in both *Campbell-Ewald* and *Genesis Healthcare* concerned circumstances where a named plaintiff's individual claim was moot as a result of an offer of judgment, there is no reason for a different result here. With

8

respect to any department-specific collective that would be solely represented by Tyeryar, Gayle, or McCray, and where the Court granted summary judgment as to the claims pertaining to that department, there is no longer any plaintiff in the proposed collective "with a live individual case." *Campbell-Ewald*, 136 S. Ct. at 670. Therefore, no suit may be maintained with respect to those collectives. *See id.*

Plaintiffs argue that "[c]ourts routinely authorize notice to departments, positions, locations and the like where no named plaintiff worked so long as there are other indicia that the parties are similarly situated." Pls.' Reply at 22. That may be true as a general matter. But the critical question is not whether a named plaintiff in a certain department could be similarly situated to a group of employees in a different department. The question is whether a collective can be "conditionally certified" when there is no named plaintiff with a viable claim pertaining to that proposed collective in the first instance. It is important that Plaintiffs only seek "conditional certification" of department-specific collectives. *See* Pl.'s Reply at 11 ("That Plaintiffs seek certification of distinct department collectives is largely lost on Defendants."). They are doing so because they argue that employees *within* each of several departments are similarly situated. *See id.* (similarity of "the meal break policies and practices" within departments "is all Plaintiffs need for a finding that those within the department collectives are similarly situated such that notice should be issued."). Without a named plaintiff from within the respective departments with a live claim regarding work in those departments, the Court cannot and will not grant "conditional certification."

With all of that in mind, the Court turns to the specific departments for which Plaintiffs seek "conditional certification" with either Gayle, McCray, or Tyeryar as representative.

With respect to Union Memorial Hospital, Plaintiffs seek "conditional certification" for employees in the Orthopedic Department, to be represented by Gayle alone. Because the Court has granted summary judgment to Defendants with respect to Gayle's FLSA claims, Gayle cannot serve as the representative for this department. Absent any other collective representative, the Court cannot and will not "conditionally certify" a Union Memorial Orthopedic Department collective. *The Court denies the "conditional certification" motion as to that department.*

With respect to Harbor Hospital, Plaintiffs seek "conditional certification" of six department-specific collectives:

1. Dialysis Department (represented by Tyeryar alone)
2. Oncology Department (represented by Tyeryar alone)
3. Orthopedic Department (represented by both Tyeryar and Dorothy Eggleston)
4. Pediatric Department (represented by Tyeryar alone)
5. Nursery and Neonatal Department (represented by Tyeryar alone)
6. Telemetry Department (represented by Tyeryar alone)

The Court granted Defendants' motion for partial summary judgment with respect to Tyeryar, granting summary judgment as to Tyeryar's FLSA claims in connection with the Dialysis Department, the Orthopedic Department, and the Nursery and Neonatal Department.[6] Regarding the Orthopedic Department, the grant of summary judgment to Defendants provides no basis for denying the "conditional certification" motion because Eggleston, another named plaintiff, is also named as a representative of the proposed collective.

Regarding the Dialysis Department and the Nursery and Neonatal Department, the Court granted summary judgment to Defendants on Plaintiffs' FLSA claims. As a result, Tyeryar has no

---

[6] Defendants did not seek summary judgment with respect to the remaining three departments—Oncology, Pediatric, or Telemetry; therefore, the Court's resolution of the motion for partial summary judgment does not provide a basis for denying Plaintiffs' request for "conditional certification" as to those departments.

viable claim against Defendants as to these departments. Plaintiffs argue that, even though there may no longer be a viable FLSA claim against Defendants as to either of those *specific departments*, the Court may "conditionally certify" collectives because these named plaintiffs retain viable claims with respect to *other departments*. The Court disagrees. Given the resolution of the motion for partial summary judgment, there are no named plaintiffs with viable claims that could serve as the basis for "similarly situated" collectives for the Dialysis Department and the Nursey and Neonatal Department. As explained above, that conclusion is sufficient to require denying Plaintiffs' request to "conditionally certify" collectives consisting of employees in those departments. It is simply immaterial whether the would-be representative as to those two departments retains a viable claim as to *other* departments. *Accordingly, the Court denies the "conditional certification" motion as to the Dialysis Department and the Nursery and Neonatal Department.*

Turning to Washington Hospital Center, Defendants argue that the Court should deny the "conditional certification" motion with respect to departmental collectives represented by named plaintiffs Cherry Graziosi and Raina McCray.[7] Because the Court denied the motion for partial summary judgment as to Cherry Graziosi, the resolution of that motion provides no basis for the denial of "conditional certification" as to the Trauma Department. Because McCray is the only named representative for eight proposed departmental collectives—the Nursery Department and Units 2H, 2NW, 3H, 3NE, 4F, 4H, and 4NW—and because the Court granted summary judgment to Defendants as to McCray's FLSA claims, there is no basis for "conditional certification" of

---

[7] Defendants do not present any such argument with respect to the Cardiac Arrhythmia Center (represented by Lisa Braswell) or with respect to Unit 4D (represented by Danielle Freeman). Indeed, the Court's partial summary judgment order would provide no basis for denying "conditional certification" as to those departments.

these eight departments. Plaintiffs argue that they could substitute named plaintiffs Lisa Braswell

or Danielle Freeman for McCray to serve as representatives of these departments because both

Braswell and Freeman worked elsewhere at Washington Hospital Center. Notably, Plaintiffs have

not even attempted to actually effect such substitutions—either before or after the Court resolved

Defendants' motion for partial summary judgment. Moreover, doing so would be inconsistent

with Plaintiffs' entire theory of this case: that even if employees across an entire hospital are not

similarly situated, employees *within* specific departments may be similarly situated. Indeed, that

theory emerged, at least in part, from the Court's resolution of the "conditional certification"

motion in *Dinkel*, in which the Court rejected a hospital-wide collective as to the meal break

claims, but allowed several department-specific collectives as to those claims. *See* 880 F. Supp.

2d at 55-57. For these reasons, the Court concludes that Plaintiffs' suggestion that either

Braswell or Freeman could be substituted as representatives of the several proposed collectives

to be represented by McCray does not provide a basis to "conditionally certify" those collectives.

*Accordingly, the Court denies Plaintiffs' motion for conditional certification as to the Nursery*

*Department and Units 2H, 2NW, 3H, 3NE, 4F, 4H, and 4NW at Washington Hospital Center.*

In sum, in light of the resolution of the motion for partial summary judgment, the Court

denies "conditional certification" as to the following proposed departmental collectives:

- MedStar Harbor Hospital
    - Dialysis Department
    - Nursery and Neonatal Department
- MedStar Union Memorial Hospital
    - Orthopedic Department
- MedStar Washington Hospital Center
    - Nursery Department
    - Unit 2H
    - Unit 2NW
    - Unit 3H
    - Unit 3NE

- o  Unit 4F
- o  Unit 4H
- o  Unit 4NW

In other words, the following nine proposed collectives are the only collectives that are not

eliminated as a result of the parties' arguments regarding the impact of the Court' granting partial

summary judgment to Defendants:

- MedStar Franklin Square Medical Center
  - o  Intensive Care Unit
  - o  Pharmacy Department
- MedStar Harbor Hospital
  - o  Oncology Department
  - o  Orthopedic Department
  - o  Pediatric Department
  - o  Telemetry Department
- MedStar Washington Hospital Center
  - o  Cardiac Arrhythmia Center
  - o  Unit 4D
  - o  Trauma Department

The Court addresses Defendants' other arguments in opposition to the motion for "conditional

certification," below, in the context of these remaining nine proposed collectives.

## B.  Defendants' Other Arguments Opposing "Conditional Certification"

The Court now turns to Defendants' other arguments that "conditional certification" is

not warranted, as applied to the nine proposed collectives that are not eliminated as result of the

Court's resolution of Defendants' motion for partial summary judgment. The Court first

addresses Defendants' argument regarding the legal standard for "conditional certification,"

where, as here, the Court has already allowed a brief period of discovery. Then, the Court

addresses Defendants' several arguments that, essentially, the members of the proposed

collectives are not similarly situated to the respective named plaintiffs. The Court concludes that

none of Defendants' remaining arguments have merit at this stage of these proceedings and will "conditionally certify" nine department-specific collectives.

### 1.   A Heightened Legal Standard?

Defendants argue that, because the parties have already exchanged some discovery, the Court should apply a more stringent standard for reviewing the request for "conditional certification" than the one generally applicable to such motions. Specifically, Defendants argue that the Court ought to apply something akin to the "modest plus" legal standard used by certain district courts in Ohio. *See* Defs.' Opp'n at 27-28 (citing cases). The Court agrees with Plaintiffs that there is no basis to apply a heightened legal standard in this case at the "conditional certification" stage. The fact that more than two years have elapsed since the filing of this case is immaterial. That passage of time largely occurred because Defendants, first, filed a motion to dismiss and/or to sever claims for misjoinder and, then, requested a period of discovery before the Court resolved Plaintiffs' motion for "conditional certification" (which had already been filed). It is certainly within Defendants' rights to file a motion to dismiss, and the Court concluded that it was proper to allow a period of discovery before resolving the question of "conditional certification." However, the length of time that has elapsed as a result of those decisions does not provide a basis for applying a higher standard for "conditional certification." There is no basis in the text of the FLSA or in the associate case law for a higher standard in these circumstances. Nor would it be fair to impose a higher burden on Plaintiffs as a result of *Defendants'* actions in this case.

In *Dinkel*, this Court explained that the standard for "conditional certification" is that "plaintiffs must present 'some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it

affected other employees.' " 880 F. Supp. 2d at 53 (quoting *Symczyk*, 656 F.3d at 193) (alteration in original). The Court also noted that "[t]his factual showing has been described as "not particularly stringent, fairly lenient, flexible, [and] not heavy.' " *Id.* (quoting *Morgan*, 551 F.3d at 1261). In *Dinkel*, this Court applied this "fairly lenient" standard after the parties had engaged in three months of discovery, *id.* at 51, much as the parties have done—at Defendants' request—in this case. Finally, the Court in *Dinkel* refrained from resolving factual disputes at the "conditional certification" stage. *See id.* at 58 n.7 ("[U]nlike a motion for summary judgment, courts ordinarily do not address disputed factual matters when presented with a motion for conditional certification."). Throughout their papers, the parties have cited an array of district court cases from this and other jurisdictions regarding how district courts have exercised their discretion under the FLSA. The Court does not find any basis in those cases to deviate from the path it followed in *Dinkel*; therefore, further analysis of those cases is not necessary here. In considering whether to grant the request for "conditional certification," the Court will not use a heightened standard in evaluating the record now before it. Moreover, the Court will not resolve issues of fact at this stage. Such issues will be considered if, subsequently, Defendants seek "de-certification" of any of the collectives that the Court "conditionally certifies" today.

Finally, the Court notes that it appears that Defendants seek premature resolution of factual issues in this case. The Court need only determine at this stage whether Plaintiffs have identified collectives that contain potential "plaintiffs who *may be* 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555 (emphasis added) (citing cases). The purpose of sending the notice is to determine whether such individuals exist; it is, therefore, not necessary to pretermit that inquiry and require proof that those potential plaintiffs are, actually, similarly situated before those potential plaintiffs even

identify themselves. *See id.* ("The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist[.]") (emphasis added and citations omitted). If there are individuals who opt-in to participating in this case as party-plaintiffs, the Court can subsequently determine whether those individuals are, in fact, similarly situated and whether this action can proceed as a representative action under the FLSA.

The Court now turns to Defendants' specific arguments why the proposed collectives should not be "conditionally certified."

### 2. Differences Among and Within Departments

Defendants argue that the proposed collectives should not be "conditionally certified" because of differences among the departments identified by Plaintiffs. *See, e.g.*, Defs.' Mot. at 34 ("The alleged common policies that Plaintiffs complain of are, in fact, decentralized and vary drastically depending on the individual department."). However, as the Court has explained above, Plaintiffs are seeking "conditional certification" of department-specific collectives. Accordingly, differences among departments provide no basis for denying Plaintiffs' "conditional certification" motion, even in part. With respect to differences within departments, the Court concludes that Defendants have not rebutted Plaintiffs' showing that employees within the individual departments may be similarly situated. Of course, it is possible that differences among employees in a single department may, ultimately, result in a determination that some or all of those employees are not "similarly situated." However, Defendants' mere suggestion that such differences exist, whether by position or by shift, do not pose a stumbling block to the issuance of notice to the employees in the nine remaining proposed collectives.

Similarly, Defendants argue that the notice that Plaintiffs seek to distribute should be limited to employees that worked in the individual departments at the same time as the named plaintiffs. The Court disagrees. Defendants have not suggested affirmatively that policies or practices within individual departments have shifted over time.[8] And there is no reason to infer such changes based on the record before the Court. Moreover, there is no basis in the case law to apply such a firm limit at this stage of the proceedings. As the Court has emphasized, whether any such employees are, in fact, similarly situated, can be determined *after* such employees have the opportunity to opt-in to this action and after additional discovery.

Finally, the Court need not address the supposed contradictions that Defendants have identified in the record. The Court will not weigh the evidence at this stage. The only question is whether there is enough evidence in the record to conclude that there may be "similarly situated" employees in the nine identified departments such that notice to those employees is warranted. Plaintiffs have provided the required support based on the personal knowledge of the named plaintiffs and based on the evidence in the record as a whole. The Court concludes that any alleged contradictions do not undermine the proffered basis for "conditional certification." In sum, Defendants have not identified any reason to conclude that any differences among or within the nine individual departments considered here indicate that there are not employees within the respective departments who are "similarly situated."

### 3.   Manageability

Finally, the Court addresses the question of manageability of a representative action based on the nine proposed department-specific collectives that remain in this case. It bears

---

[8] The Court need not address, at this stage, the parties' dispute regarding the supposed acknowledgement by Defendants that policies *have not* changed over time and regarding the scope of any such acknowledgment.

emphasizing that the scope of this action has evolved over the course of this case thus far, becoming more modest over time. The Fourth Amended Complaint included more than 50 proposed collectives. In the pending motion for "conditional certification," Plaintiffs then proposed 20 department-specific collectives. And, now, as a result of the Court's resolution of Defendants' motion for partial summary judgment and the attendant elimination of collectives based on certain named plaintiffs, the Court is considering only nine department-specific collectives at a total of three hospitals. Nine collectives proceeding in a single action are manageable in a way that more than 50 may not have been. At this time, Defendants have not shown that an action including the nine proposed collectives could not be manageable going forward.

The Court concludes that any further consideration of manageability issues is properly postponed until after other "similarly situated" employees have had an opportunity to opt-in. Indeed, further discovery, potential dispositive motions, and any motions for "de-certification" have the potential to further shape the scope of the case. Any questions about the proper use of representative evidence at trial, as well as whether bifurcation for trial is warranted, are properly considered at later stages of these proceedings. Finally, the Court will consider the scope of discovery, including the scope of the discovery as to the opt-in plaintiffs, after such individuals have had a chance to opt-in.

*     *     *

For all of these reasons, the Court will "conditionally certify" department-specific collectives pertaining to the following nine departments:

- MedStar Franklin Square Medical Center
  - Intensive Care Unit
  - Pharmacy Department
- MedStar Harbor Hospital

- o  Oncology Department
- o  Orthopedic Department
- o  Pediatric Department
- o  Telemetry Department
- MedStar Washington Hospital Center
  - o  Cardiac Arrhythmia Center
  - o  Unit 4D
  - o  Trauma Department

The Court concludes there is a basis in the record to conclude that these nine collectives include employees who may be "similarly situated" to the named plaintiffs in this case. The Court will authorize the sending of a notice to employees who have worked in these departments within the appropriate statute of limitations.

## C.  Notice

The Court now addresses the parties' arguments regarding the notice that Plaintiffs seek to send to the "conditionally certified" collectives. The Court notes that Plaintiffs have proposed a form of notice that is substantially similar to the one issued in *Dinkel*. Defendants raise several specific objections to the proposed notice, the method of dissemination and collection, and the data to be generated and shared by Defendants. The Court will provide guidance in this Memorandum Opinion and Order regarding the disputes between the parties. However, the Court will not definitively resolve those issues today. Instead, the Court will require the parties to confer, in light of the Court's guidance and the current posture of the case, in order to attempt to resolve the remaining issues jointly.

### 1.  Preservation Language

Plaintiffs' proposed notice includes language regarding the discovery obligations of any individual that opts in to this action. *See* Proposed Notice, ECF No. 75-3, at 2 ("While the lawsuit is proceeding, you may be required to provide Defendants with documents, information,

and/or deposition testimony relating to your claim."). Emphasizing that the current plaintiffs appear unaware of their discovery obligations, Defendants request that language regarding the preservation obligations of party-plaintiffs be added to the notice. Specifically, they request—in a footnote—that the following language replace Plaintiffs' proposed language regarding discovery:

> By joining the lawsuit, you may be required to participate in the litigation, including providing information, producing documents, responding to written discovery requests, sitting for a deposition and testifying in court. If you join the case, you must preserve any information and/or documents you may have pertaining to your employment with Defendants including but not limited to time records, information related to meal or rest breaks taken by you, email, or social media.

Defs.' Opp'n at 44 n.52. Defendants never explain why the existing language about discovery is insufficient—aside from the issue of preservation obligations—and the Court sees no reason to require changes to the sentence currently included in the proposed notice regarding discovery. Indeed, that sentence is identical to the one included in the notice disseminated in *Dinkel. See* Joint Status Report, *Dinkel v. Medstar*, 11c-v-998-CKK, ECF No. 44-1 (Aug. 29, 2012). With respect to preservation, the Court agrees with Defendants that some modest language regarding preservation would be proper. However, the Court also agrees with Plaintiffs that the language proposed by Defendants is excessive. *Accordingly, the parties shall confer to determine whether they can agree on modest language regarding the preservation of materials by party-plaintiffs who opt in.*

### 2. Providing Information to Plaintiffs' Counsel

Defendants argue that the information regarding the collective members should not be given to Plaintiffs' counsel, but rather should be entrusted only to a third-party, in order to ensure that the information is not misused. Plaintiffs respond that an appropriate protective order

would—or should eliminate—Defendants' concerns. *The parties shall confer regarding a potential protective order in order to determine whether they can agree on an order that would eliminate Defendants' concerns about providing information directly to Plaintiffs' counsel.*

### 3.   Methods of Dissemination and Return

In addition to names and addresses for the members of the "conditionally certified" collectives, Plaintiffs request the telephone number and e-mail address for each of those individuals. Plaintiffs seek to disseminate the proposed notice by e-mail, as well as by "regular" mail (via the United States Postal Service). Plaintiffs do not make clear the purpose of the telephone information; therefore, in the interest of protecting the privacy interests of the members of the proposed collectives, the Court will not require that Defendants' provide telephone numbers for the members of the "conditionally certified" collectives.[9]

With respect to dissemination by e-mail, the Court acknowledges that the availability and use of certain technological media has evolved since the Court's "conditional certification" order in *Dinkel*, four years ago. Nevertheless, the Court is wary of using such a method of dissemination and the attendant invasion of privacy entailed by providing e-mail addresses to Plaintiffs' counsel. However, the Court will provide the parties an opportunity to confer to attempt to narrow the areas of disagreement regarding such methods. In doing so, Plaintiffs shall clarify whether they seek to use e-mail for all collective members, or simply for former MedStar employees. *See Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012) (e-mail and mail both used for former employees); *Swigart v. Fifth Third Bank*,

---

[9] In Plaintiffs' Reply, they discuss another case in which telephone numbers were used to disseminate, via text message, a link to a notice and opt-in form. But nowhere do Plaintiffs suggest that they seek to disseminate notice via text message. Nor would the Court be convinced that disseminating the information by such a mechanism is proper.

276 F.R.D. 210, 215 (S.D. Ohio 2011) ("The Court also finds that Plaintiffs' proposed plan for

transmitting judicial notice to all putative opt-in Plaintiffs by mail and, additionally by email to

those who are no longer employed by Fifth Third Bank, is appropriate.") (noting that plan was

unopposed). In addition, Plaintiffs shall further explain (a) what information would be included

in the text of any e-mail, to which the proposed notice and opt-in form would be attached and

(b) security mechanisms to ensure that the notice itself is not compromised by virtue of

distribution by e-mail.[10]

     Regarding the method by which recipients of the notice can return the opt-in form, the

Court concludes that it is preferable that all forms be returned by mail to the mailing address

designated by Plaintiffs' counsel, rather than by e-mailing those forms or otherwise transmitting

them electronically. The Court also notes that requiring these forms to be mailed would not be a

significant burden on the opt-in Plaintiffs, nor would it substantially delay the prosecution of this

action. Therefore, even if the Court is subsequently persuaded to allow distribution of the notice

and opt-in form via e-mail to some or all collective members, the Court will not permit the opt-in

plaintiffs to return those forms by e-mail.

     The parties shall confer regarding these remaining issues in an attempt to resolve them

and, at a minimum, to narrow the areas of disagreement. They shall file a Joint Status Report

regarding the notice, identifying any areas of disagreement that remain, as specified below. In

addition, the Defendants shall include, in the Joint Status Report, an estimate of the number of

members of the approved collectives who would receive notice, in order to aid the Court in

determining the final form of the notice and the method for delivery. In light of the remaining

---

[10] Such methods may include the use of Adobe Acrobat Portable Document Format, as well as
the use of security settings within Adobe Acrobat.

issues, the Court will not set a deadline, today, for Defendants to deliver the data regarding the employees in the "conditionally certified" collectives. However, Defendants shall prepare to do so promptly after the parties file their Joint Status Report and after the Court approves the final form and methodology of notice to the "conditionally certified" collectives.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' [75] Revised Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b) is GRANTED-IN-PART and DENIED-IN-PART.

It is further **ORDERED** that the Court conditionally certifies the following nine collectives, and authorizes the sending of notices to all employees who worked in any of the following nine departments within three years of the date of this Order:

1. MedStar Franklin Square Medical Center, Intensive Care Unit
2. MedStar Franklin Square Medical Center, Pharmacy Department
3. MedStar Harbor Hospital, Oncology Department
4. MedStar Harbor Hospital, Orthopedic Department
5. MedStar Harbor Hospital, Pediatric Department
6. MedStar Harbor Hospital, Telemetry Department
7. MedStar Washington Hospital Center, Cardiac Arrhythmia Center
8. MedStar Washington Hospital Center, Unit 4D
9. MedStar Washington Hospital Center, Trauma Department

It is further **ORDERED** that the [75] Revised Motion is DENIED as to all proposed collectives other than the nine collectives enumerated immediately above.

It is further **ORDERED** that parties shall confer regarding the remaining issues pertaining to the notice, as explained above, and shall file a Joint Status Report regarding the parties' attempt to resolve those issues jointly by no later than **June 3, 2016**. As explained above, the Joint Status Report shall include an estimate of the number of members of nine approved

collectives who will be sent notice. *The Court will specify the content of the notices and the methodology for distributing those notices upon reviewing the Joint Status Report.*

It is further **ORDERED** that Defendants' [82] Motion for Leave To File a Sur-Reply in Further Opposition To Plaintiffs' Revised Motion for Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(B) is GRANTED.

Dated: May 20, 2016

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge